6

ANTONIO RODRÍGUEZ, ETC., Plaintiff and Appellee, v. JUAN
RAMÓN RAMOS, Defendant and Appellant.

No. 10597.    Argued January 2, 1952.—Decided January 10, 1952.

*Brown, Newsom & Córdova* and *R. Díaz Collazo* for appellant.
    *Víctor Rivera Colón* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The essential averments of the complaint in an action
for support brought by the minor Antonio Rodríguez, repre-
sented by his mother with *patria potestas*, Ana Rodríguez,
against Juan Ramón Ramos, may be summed up as follows:
during the last months of 1931 and the first nine of 1932,
the minor's mother and the defendant had intimate relations
as a result of which the plaintiff was born on September 30,
1932; since his birth until the present time the minor has
been in the uninterrupted possession of the status of a na-
tural child of the defendant, justified by acts of the latter
and of his family; the plaintiff's mother was known to have
lived in concubinage, both during her pregnancy and at the
time of the birth of the minor, from which latter date the
defendant and his family have been devoted to the minor,
publicly and openly, and cared for him during his illnesses;
at present the defendant is not supporting the minor who
lacks the means to support himself; the defendant is solvent,

since he owns real estate worth over $150,000 and receives rents and profits from his properties and activities exceeding $5,000 monthly; and the minor needs at least $200 monthly for his clothing, education, medicine, entertainment and miscellaneous expenses. Judgment is prayed for ordering the defendant to give plaintiff the aforesaid sum for support, plus $2,000 as attorney's fees.

The defendant answered denying the essential facts of the complaint, the case was tried, and mainly oral evidence, offered by both parties, was heard. The opinion delivered by the lower court in support of its judgment contains the following Findings of Fact:

"In the month of April 1931, and while the defendant was already married to María Piñot Díaz, he had a hotel in the town of Manatí, Puerto Rico, known as Hotel Comercio, in which he lived with his wife and a small daughter. Ana Rodríguez, plaintiff's mother, who was then a young girl, came at that time to work as a maid for defendant's family and occupied a room in the same hotel.

"In the same room that Ana Rodríguez occupied in the aforesaid hotel the defendant induced her to have sexual intercourse with him, and for four months he visited Ana Rodríguez's room at night and had intercourse with her, until in December of that same year Ana Rodríguez told the defendant that she was pregnant. Alarmed he confessed his fear that his wife might find out and persuaded her to return to her mother's house in the Mameyes Ward of Utuado, and to quiet her he offered to purchase her a small house and to establish her in one of his farms. The defendant continued having sexual intercourse with Ana Rodríguez in her mother's house in the Mameyes Ward, of Utuado, where he went occasionally some week days, and every Saturday afternoon, going to bed with her until Sunday morning. He continued to do this until Ana Rodríguez was about to give birth.

"On September 30, 1932, Ana Rodríguez gave birth to the plaintiff Antonio Rodríguez in the Mameyes Ward, of Utuado, in her mother's house, who took care of her during childbirth. The defendant went to see the child several days after it was born and left some money for its expenses. Also, during the

time that Ana Rodríguez lived in her mother's house, while she continued to have sexual intercourse with him, the defendant defrayed all household expenses.

"After the child was born the defendant stopped looking after Ana Rodríguez and giving her money for her expenses, and she used to go to the town of Manatí, every Saturday, to the house of a friend called Berta Molina and from there sent for the defendant, who came to see her and gave her two or three dollars every week. During these visits in Berta Molina's house, Ana Rodríguez and the defendant did not have intimate relations, said calls being limited to Ana Rodríguez requesting support for the child and the defendant giving it in the amount above mentioned. Too, the defendant caressed the child and stated there that it looked like his daughter.

"By that time the defendant was a Senator for the District of Arecibo and then as now he was a property owner and a farmer.

"Because of the scant financial aid she received from the defendant, Ana Rodríguez left the child in her mother's house in the Mameyes Ward, of Utuado, and came to the city of San Juan, Puerto Rico, where she started working as a maid in private homes earning about $15 monthly with which she helped to take care of her child's expenses, until finally she rented a room in Santurce and brought over her mother and child.

"During the following period and until 1943, the defendant occasionally gave money to Ana Rodríguez for the child at her request and at other times he sent her money through his brother Rafael Ramos. In 1943 the child Antonio Rodríguez, the plaintiff, became seriously ill and had to be confined in the Municipal Hospital of San Juan and later, through the efforts of Rafael Ramos, defendant's brother, the minor was taken to the Clínica Maldonado, in Hato Rey, where he stayed for a month. The expenses and medical attendance which exceeded $200 were paid by the defendant Juan Ramón Ramos.

"After Ana Rodríguez came to San Juan to live and brought along her mother and child, the defendant stopped visiting Ana Rodríguez or the child Antonio Rodríguez, the plaintiff, nor did he look after them any more except in the aforesaid occasions, always at Ana Rodríguez's request and urging.

"After the child Antonio Rodríguez left the Clínica Maldonado, Ana Rodríguez went with her child, plaintiff Antonio Rodríguez, to Vega Baja, where the defendant lived at that time,

and sent for him. When she asked him to acknowledge the child and to continue helping them financially the defendant replied that he could not recognize the child because he was married, and as to her request for financial aid he asked her whether she did not think that the two-hundred and odd dollars he paid to the clinic were not enough.

"From 1943 until the date of the trial in June 1947, four years elapsed during which Ana Rodríguez received no help from the defendant for her child.

"As to the amount for support claimed by the plaintiff minor it was proved that the minor lacks the means to take care of its needs, save the scant aid it receives from its mother Ana Rodríguez, who earned $15 per month as a maid in a private house and who had to pay, with those $15, for a room for her mother and child.

"The defendant Juan Ramón Ramos is a farmer, as appears from a certificate issued by the Treasurer of Puerto Rico (plaintiff's exhibits 1 and 2), and on the date the case was heard on February 24, 1948, he owned in the municipality of Manatí seven rural farms having an area of 641.57 cuerdas, located on different wards of said municipality and assessed for tax purposes at $27,230. He also owned three automobiles, assessed for tax purposes at $3,900, and livestock and farming vehicles, in the municipalities of Manatí and Vega Baja, valued at $2,940, that is, all his properties, according to those certificates, were assessed for tax purposes at $34,070.

"In connection with the properties above referred to the defendant paid annually to the Treasurer of Puerto Rico the amount of $825.02 as property taxes, and in accordance with the aforesaid certificates on February 24, 1948, the defendant owed the Treasurer only the amount corresponding to the year 1947-48.

"The defendant declared that he derives his income from agriculture, mainly from sugar cane, and that one of his farms, of 322 cuerdas, was involved in a pending suit for revendication and that another farm of 166 cuerdas was mortgaged in favor of the Royal Bank of Canada."

The court a quo immediately stated in its conclusions of law that "even though in the complaint the action is entitled as one for 'support' and in its prayer judgment for support only is requested, however, pursuant to the provisions of Rule

54 (c) of the Rules of Civil Procedure the plaintiff is entitled to any other relief justified by the pleadings and the evidence"; that since the defendant was married at the time of the minor's conception, the case necessarily had to be considered within the limitations established by § 2 of Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945; that "the paternity having been established, the plaintiff minor is entitled to receive support from his father, the defendant"; and that it deemed "that the foregoing, as to the paternity and as to the status of Ana Rodríguez as defendant's paramour, together with the conduct of the defendant and of his brother Rafael towards the plaintiff, is sufficient to declare the plaintiff an acknowledged natural child of the defendant." In conformity with the foregoing it entered judgment granting the complaint and "declaring the plaintiff Antonio Rodríguez an acknowledged natural child of the defendant Juan Ramón Ramos Rodríguez, for the sole purpose of bearing his father's surname," ordering also the defendant to give to plaintiff an allowance for support in the amount of $40 monthly.

Feeling aggrieved by that judgment the defendant appealed. He now contends in his first two assignments of error that the court erred "in declaring plaintiff an acknowledged natural child of the defendant in a summary action for support which was not joined to an ordinary action of filiation for the acknowledgment of a natural child" and, assuming that it could do that, in deciding that the evidence was sufficient to establish filiation.

Unquestionably the first error assigned was committed. Although actions of filiation and for support may be joined—*Vargas* v. *Jusino*, 71 P.R.R. 362, 368; *Acevedo* v. *District Court*, 70 P.R.R. 89, 90—that does not mean that when an action is brought solely for support, judgment may be entered within the same suit as to the filiation of the plaintiff minor. Actions for support are covered by the procedure provided for actions of unlawful detainer. Section

84 of the Act relating to Special Legal Proceedings, Revised Statutes, 1911, pp. 300, 314. That is a summary proceeding and the Rules of Civil Procedure are not applicable thereto. Consequently, they are not applicable either to actions for support. *Acevedo* v. *District Court, supra; Falcón* v. *Cruz*, 67 P.R.R. 496, 497. Therefore no reference should have been made to said rules. The court was fully aware of the only action pending before it, for as it stated at the commencement of the hearing on June 9, 1947, "the question is reduced to the support for an illegitimate child, who has not the status of an acknowledged child or of a natural child that may be acknowledged." The two hearings required by law were held jointly and when the defendant went to trial it is to be presumed that he was prepared to defend himself only against the claim for support. We realize, of course, that it was the trial judge's commendable desire to do substantial justice which led him in this case to enter a judgment whose scope went beyond the prayer of the complaint. However, regardless of how praiseworthy his purpose may have been, for the above-stated reasons he was barred from determining the minor's filiation within the action for support which was the only matter before him.

Nevertheless, the error committed is not reversible. The judgment entered covers the claim for support and as to the latter it may, as we shall see, be upheld. In view of the foregoing conclusion, the second assignment need not be discussed.

The third assignment is to the effect that the lower court erred in the weighing of the evidence. A perusal of the transcript of the evidence has convinced us that it justifies amply the findings of the lower court in connection with the support claimed.

The judgment appealed from will be modified in the sense of eliminating therefrom the pronouncement declaring the plaintiff an acknowledged natural child of the defendant, and as modified it will be affirmed.